

# HELEN F. DALTON & ASSOCIATES, P.C.
*ATTORNEYS AT LAW*

80-02 Kew Gardens Road, Suite 601
Kew Gardens, New York 11415

January 28, 2022

**Via ECF**
The Honorable District Judge Analisa Torres
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re: **Alfonso v. 384 3rd Avenue Rest. LLC, et al.**
      **21-CV-5316 (AT)**

Dear Judge Torres:

Our office represents Jhonathan Martinez Alfonso ("Alfonso" or "Plaintiff") in the above-referenced matters and we submit this motion jointly with counsel for 384 3rd Avenue Rest. LLC d/b/a Tara Rose and Kevin Doherty (collectively, the "Defendants") seeking approval of the Settlement Agreement (attached hereto as **Exhibit 1**) ("the Agreement") as fair and reasonable[1]. The terms of the Agreement were reached at a Court-annexed mediation through the SDNY Mediation Program before a Court-appointed neutral.

The parties submit that the terms of the Agreement comport with *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d. Cir. 2015) and provide analysis using the factors articulated in *Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335-336* as a basis for why the Court should approve the Agreement. Separately, Plaintiff's counsel addresses their request for attorneys' fees and their fee arrangement with Plaintiff.

### I.    The Wolinsky Factors

The parties analyze the fairness and reasonableness of the Agreement utilizing the factors articulated in *Wolinsky*:

**1. The Plaintiff's range of possible recovery:**

   **a. Plaintiff's Position**

Plaintiff was formerly employed by Defendants at Tara Rose, located at 384 3rd Avenue, New York, NY 10016, from in or around October 2019 until in or around January

---

[1] The Settlement Agreement has been filed unsigned, but both parties are in the process of executing the attached agreement and the parties can promptly supplement this Motion with a fully-executed copy.

2021 as a busboy and cleaner. Plaintiff commenced this action on June 16, 2021 to recover damages resulting from alleged failures to pay the Plaintiff's overtime wages, minimum wages, and spread of hours compensation, in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Laws and state regulations ("NYLL"). Plaintiff also sought recovery for damages for statutory penalties resulting for WTPA violations under the NYLL for failure to provide the Plaintiff with written wage notices, in English and in Spanish (Plaintiff's primary language) of Plaintiff's regular and overtime rates of pay, regular pay day, and such other information as required by NYLL §195(1), and failure to provide Plaintiff with wage statements upon each payment of wages, as required by NYLL §195(3).

In particular, Plaintiff alleged that he regularly worked 63 hours per week but was paid below the applicable minimum wage rate for his first 40 hours per week and was paid below time-and-a-half the applicable minimum wage rate for his hours worked in excess of 40 each week. Plaintiff argued that Defendants were not entitled to take a tip credit as to his employment and, as such, Plaintiff was entitled to the difference between the applicable minimum wage rates and his actual hourly rates of pay.

Prior to the parties' Court-annexed mediation in November 2021, Defendants disclosed time and pay records related to Plaintiff's employment. Our office carefully reviewed these documents with the Plaintiff prior to the mediation, who maintained certain disagreements as to the accuracy of the records provided. In general, Defendants' records indicated that Plaintiff worked fewer hours than alleged.

Based on our review of the documents, we believed that if Plaintiff could establish that Defendants were not entitled to take a tip credit as to his employment, Plaintiff could recover in the range of $15,000.00 to $20,000.00 in unpaid wages in addition to liquidated damages, and recovery for a wage notice violation. As such, we believed that Plaintiff's reasonable range of recovery was between $0.00 and $40,000.00.

### b. Defendants' Position

Defendants deny that it owes Plaintiff any money. Plaintiff claims to have worked 63 hours per week. However, the clock-in clock-out records (which Plaintiff himself entered) show that Plaintiff, rarely worked over 40 hours per week. Plaintiff also conflates his damages estimate because he fails to take into account weeks where the restaurant was closed due to COVID-19 (mid-March to July 2020).

Defendants kept clear documentation on the amount of time Plaintiff worked and the amount he was paid. The time punches Plaintiff entered match the records showing how much he was paid. Plaintiff rarely worked overtime, and when he did, this was notated on his records.

Defendants were entitled to take a tip credit. With the tip credit, Plaintiff was paid $15 minimum wage. When Plaintiff worked overtime, he was paid $22.50/hour. The base and tip credits were indicated on his earnings records. With tips, the amount Plaintiff made was well above $15/hour for regular hours and $22.50/hour for overtime hours.

However, to avoid the time and expense of litigation, Defendants believed it was in their interest to settle this matter for the agreed-upon number.

### c. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $20,000.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses and records maintained by Defendants in this matter. Moreover, the settlement amount was only achieved after hours of continued negotiations at a court-annexed mediation before a Court-appointed neutral. The parties had genuine, bona fide disputes over the hours worked by Plaintiffs, the pay received by Plaintiff and whether Defendants were entitled to apply a tip credit but both sides negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount. Moreover, the settlement amount falls squarely in the realistic, possible range of settlement and allows Plaintiff to recover a substantial sum of his alleged unpaid wages – a figure strongly contested by Defendants – and takes into account both the risks of obtaining a judgment at trial and whether Plaintiff would be able to collect on any such judgment post-trial.

### 2. The extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing respective claims and defenses":

The settlement still enables the parties to avoid the anticipated burdens and expenses of formal paper discovery, including exchanging interrogatory and document demands and responses on each other, as well as depositions and a trial. Had the parties not reached a settlement, both sides faced significant time and expenses dedicated to conducting at least two party depositions and an undetermined number of non-party depositions. The parties also would have also likely engaged in pre-trial motion practice. Lastly, the parties also anticipated significant time and expenses dedicated to conducting a trial that may have lasted two or three days.

Plaintiff would have incurred expenses preparing exhibits and a hiring court-licensed translator for trial in addition to conducting the trial. Defendants would have also

been required to dedicate significant time and money toward a trial which would have served as a distraction to operating their business. The settlement gives both parties peace of mind that they will not incur additional expenses and face an uncertain outcome at trial.

3. **The seriousness of litigation risks faced by the parties:**

Both parties faced significant risks had they proceeded to trial in this matter.

Although Plaintiff was confident that he could succeed on all his claims, Plaintiff recognized the attendant risks of not prevailing at trial and not receiving any recovery. Plaintiff also could have recovered less than agreed-upon settlement at trial. Moreover, Plaintiff could have obtained a judgment against Defendants at trial on which he could not collect. The seriousness of this risk favored a guaranteed payment through a Court-approved settlement for Plaintiff.

Defendants also faced the risk of losing at trial and not only having to pay any potential unpaid wages, liquidated damages and penalties to Plaintiff but also Plaintiff's counsel's reasonable attorneys' fees.

4. **Whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel":**

The parties engaged in extensive back-and-forth settlement discussion through a Court-appointed mediator at a mediation held on November 18, 2021. The mediation lasted approximately 6 hours.

Plaintiff is represented by counsel who specialize in FLSA and NYLL matters and have settled hundreds of wage-and-hour cases in both New York state and federal courts. Defendants are also represented by counsel who specialize in FLSA and NYLL matters.

Further, the terms of the Settlement Agreement were the product of continued arm's-length bargaining between experienced counsel and has been carefully tailored to satisfy the criteria articulated for approval by Second Circuit courts.

5. **The possibility of fraud of collusion:**

Both parties are represented by experienced, competent counsel and the parties have maintained a professional relationship throughout the litigation. There is no possibility of fraud or collusion in this settlement.

II. **Requested Attorneys' Fees and Distribution to Plaintiff**

The parties agreed to a global settlement of $20,000.00. If the Agreement is approved by the Court, Plaintiff will recover $12,980.00 after requested attorneys' fees and reimbursement of expenses.

Plaintiff's counsel respectfully requests $530.00 for identifiable expenses, which include:
- the Southern District of New York filing fee in this matter: $402.00
- the costs of service of the Summons and Complaint on all Defendants: $128.00

Plaintiff's counsel respectfully requests one-third of the settlement less their expenses ($19,470.00), or $6,490.00 in attorneys' fees, as agreed upon in the Plaintiff's retainer agreement with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $7,020.00.

The settlement as broken down into its component parts is as follows:

**Settlement Amount:** $20,000.00
**Attorneys' Expenses:** $530.00
**Settlement less Expenses:** $19,470.00 ($20,000.00 - $530.00)
**Requested Attorneys' Fees:** $6,490.00 ($19,470.00 / 3)
**Total payable to Attorneys:** $7,020.00 ($6,490.00 + $530.00)
**Total payable to Plaintiff:** $12,980.00 ($20,000.00 - $7,020.00)

Plaintiff's attorneys and their client have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.*, 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiff's counsel throughout the litigation of both matters and the recovery secured through their efforts. Plaintiff's counsel has zealously advocated for their client throughout the litigation and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiff and the fee arrangement of one-third of the net settlement amount is regularly approved by courts in the Second Circuit.

Furthermore, as Your Honor has also requested Plaintiffs' counsel's contemporaneous billing records, please see the time records and attorney qualifications attached hereto as **Exhibit 2**.

### III.     Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of negotiations at a Court-annexed mediation and the terms of the Settlement Agreement comport with Second

Circuit case law. As such, we respectfully request that the Court approve the Settlement Agreement and dismiss this action. We thank the Court for its consideration and remain available to provide any additional information.

                Respectfully submitted,

                *James O'Donnell*
                James O'Donnell, Esq.